Charles David DUBOSE, Appellant,

v.

The STATE of Texas, Appellee.

No. 0007–94.

Court of Criminal Appeals of Texas, En Banc.

Feb. 14, 1996.

Charles Brown, Houston, for appellant.

Alan Curry, Asst. Dist. Atty., Houston, Robert A. Huttash, State's Atty., Austin, for the State.

*OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

CLINTON, Judge.

Appellant filed a motion to suppress evidence, claiming that he had not consented to a warrantless search of his person. After the trial court denied the motion, appellant pled guilty to possession of less than 28 grams of methamphetamine and "true" to two enhancement paragraphs. The trial court assessed punishment at 30 years confinement. Appellant appealed the denial of his motion to suppress evidence. The First Court of Appeals held that the trial court had erred, reversed the judgment and remanded. *DuBose v. State,* 864 S.W.2d 656 (Tex.App.—Houston [1st] 1993). We granted the State's petition for discretionary review to determine whether the court of appeals erred in holding that appellant did not voluntarily consent to

the search of his shoes.[1] Tex.R.App.Pro., Rule 200(c)(3).

In *Arcila v. State*, 834 S.W.2d 357, 360 (Tex.Cr.App.1992), we discussed this Court's role in reviewing decisions by the courts of appeals. We held that as a general policy, this Court will not interfere with an appellate court decision as long as the court of appeals, in reviewing the trial court, used the correct legal standard, considered all relevant evidence in the record, and afforded proper deference to the trial court as primary factfinder. In the instant case the court of appeals applied the correct legal standard and considered all relevant evidence, but failed to afford deference to the trial court's ruling. In effect, the court of appeals engaged in a sort of *de novo* appellate review. Instead, it should have determined whether the trial court, in finding the search to be consensual and therefore denying the motion to suppress evidence, abused its discretion.[2] In the premises, *Arcila* does not require us to defer to the court of appeals' ruling.

### I.

At the suppression hearing, the trial court heard testimony from two Houston police officers involved in the search, Officers Daniel Rosales and G.A. Flowers, and from appellant. Officer Rosales testified that he and Officer Flowers set up surveillance outside of appellant's residence. When appellant and his companion drove up and got out of their car, the officers approached them. Rosales asked appellant if he was "holding."[3] Appellant assured Rosales he was not and offered to allow Rosales to "check" him.[4] Rosales searched appellant's pockets and outer clothing but found nothing. Rosales then asked appellant if they could go inside so he could check underneath appellant's pants. Appellant responded, "There's no problem with that," and the group entered appellant's residence. There, Rosales asked appellant to pull down his pants. Appellant complied, but Rosales did not find any drugs. After appellant pulled his pants back up, Rosales asked appellant to take off his shoes. When appellant took off his right shoe, Rosales saw a plastic baggie fall from the shoe. Rosales picked up the baggie and appellant admitted that it contained methamphetamine. Rosales then placed appellant under arrest.

Officer Flowers' testimony was similar to that of Rosales. Flowers testified that appellant consented to the entire search, outside and inside of the residence. Flowers testified that when they entered the residence, he pulled out his gun for safety. While Rosales searched appellant, Flowers kept the gun in his hand, but down by his side. According to Flowers, he never pointed his gun at appellant.

Appellant testified that he never consented to be searched, either outside or inside the house. Officer Flowers had already drawn his gun when the officers approached. When appellant told them he did not have any drugs, the officers searched him outside without his consent. The officers then directed him to go inside so that they could do a strip search. The baggie of methamphetamine, which the officers seized, did not fall out of appellant's shoe, but rather was already under the couch.

### II.

The trial court found that appellant voluntarily consented to the entire search.

---

1. The State's ground for review states:
 "The First Court of Appeals erred in holding that the trial court could not reasonably have found that appellant voluntarily consented to the search of his shoe."

2. "The State does not merely dispute the treatment of the facts by the court of appeals, see *Arcila v. State*, 834 S.W.2d 357, 360 (Tex.Crim. App.1992), but the standards of review employed by the court of appeals in reviewing those facts." State's Brief on PDR at pg. 6 n. 1.

3. Officer Rosales testified that "holding," in this context, means being in possession of narcotics.

4. Officer Rosales testified on cross examination that the full exchange was as follows:

 "Q: [defense counsel] And then exactly what words were asked for a consent? What question did you put toward him for a consent? A: I just asked him again—I said, 'Chuck, are you sure you're not holding?'
 'Rosey, I'm not holding. You can check me if you want to.'
 I said, 'You don't mind if I search you?'
 And he said, 'No, sir.'"

*DuBose*, 864 S.W.2d at 660. The court of appeals, however, held that appellant had voluntarily consented to only part of the search. In analyzing the scope of appellant's consent, the court of appeals broke down the search into "discrete segments." It held that the trial court's finding that appellant consented to the outer body search outside of his residence was supported by the record, which showed appellant voluntarily agreed by both his words and his actions. *Id.* The trial court's finding that appellant had consented to the search under his pants was supported by the record, which showed that appellant verbally gave his consent to that search request while still outside of the residence and before any weapons were drawn. *Id.*

However, the court of appeals held that the trial court's finding that appellant had consented to the search of his shoes was not supported by the record. The court of appeals based this holding on its finding that the search of the shoes went beyond the scope of appellant's consent to the outer body search and his consent to the search under his pants. Furthermore, no additional consent was given for the search of the shoes. Appellant's removal of his shoes, upon request and without any objection, did not constitute voluntary consent because Officer Flowers had already drawn his gun, creating a coercive atmosphere. The court of appeals concluded: "No evidence in the record supports that consent was freely given at the point of the search when appellant was moved inside and weapons were produced." *Id.,* at 661.

### III.

■ The State must prove, by clear and convincing evidence, that consent to a search was freely and voluntarily given. See *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 802 (1968); *Paprskar v. State,* 484 S.W.2d 731, 737 (Tex. Cr.App.1972), *overruled on other grounds, Kolb v. State,* 532 S.W.2d 87, 89 n. 2 (Tex.Cr. App.1976). For consent to be voluntary, it must not be the product of duress or coercion, actual or implied. See *Paulus v. State,* 633 S.W.2d 827, 850 (Tex.Cr.App. [Panel Op.]

1981); *Allridge v. State,* 850 S.W.2d 471, 493 (Tex.Cr.App.1991), *cert. denied,* —— U.S. ——, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). Whether the consent to search was in fact voluntary is to be determined from the totality of the circumstances. See *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854, 863 (1973); *Johnson v. State,* 803 S.W.2d 272, 286 (Tex.Cr. App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991), *overruled on other grounds, Heitman v. State,* 815 S.W.2d 681 (Tex.Cr.App.1991).

■ Even when an individual voluntarily consents to a search, an officer's authority to perform the search is not without limit. *May v. State,* 582 S.W.2d 848, 851 (Tex.Cr. App. [Panel Op.] 1979). The extent of the search is limited to the scope of the consent given, and the scope of the consent is generally defined by its expressed object. See *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297, 303 (1991); *May,* 582 S.W.2d at 851; *Montoya v. State,* 744 S.W.2d 15, 25 (Tex.Cr.App.1987), *cert. denied,* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988). The standard for measuring the scope of consent is that of "objective" reasonableness—what the typical reasonable person would have understood by the exchange between the officer and the individual. *Jimeno,* 500 U.S. at 251, 111 S.Ct. at 1803–04, 114 L.Ed.2d at 302.

■ At a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses, as well as the weight to be given their testimony. *Taylor v. State,* 604 S.W.2d 175, 177 (Tex.Cr.App. [Panel Op.] 1980); *Allridge,* 850 S.W.2d at 492. The trial judge is also the initial arbiter of the legal significance of those facts. See Tex.R.Cr.Evid., Rule 104(a); *Montgomery v. State,* 810 S.W.2d 372 (Tex. Cr.App.1990) (Opinion on rehearing on Court's own motion). The court of appeals is to limit its review of the trial court's rulings, both as to the facts and the legal significance of those facts, to a determination of whether the trial court abused its discretion. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Cr.App. 1990). Even if the court of appeals would have reached a different result, as long as

the trial court's rulings are at least within the "zone of reasonable disagreement," the appellate court should not intercede. *Montgomery*, 810 S.W.2d at 391.

## IV.

 The trial court denied appellant's motion to suppress evidence. In finding that appellant consented to the entire search, the trial court must have resolved any factual disputes germane to consent in favor of the State.[5] The court of appeals did not dispute the trial court's resolution of the historical facts. Instead, the court of appeals proceeded to analyze the legal significance of those facts by breaking down the search, and the corresponding consent, into "discrete segments." Based on this analysis, the court of appeals found that appellant did not voluntarily consent to the search of his shoe. However, this does not afford proper deference to the trial court. The appellate court should not defer merely to the trial court's findings regarding the historical facts but also to the trial court's conclusions regarding the legal significance of those facts. It would appear that when the trial court analyzed the legal significance of the historical facts it did not break down the search, and the corresponding consent, into discrete segments. See n. 6, *ante*. The real question for the court of appeals was whether it would have been rational for the trial court to analyze the search in any way other than in discrete segments. For example, would it have been rational for the trial court to look at this search, and the consent, not in discrete segments, but rather as one continuous occurrence, which began outside of the residence and continued inside? Would it have been rational, under this analysis, for the trial court to find that when appellant gave his consent to be searched, the police reasonably understood this to cover all reasonable means for determining whether appellant was in possession of narcotics—including checking inside appellant's pants, to which appellant readily acceded, and later removing his shoes? Only by viewing the facts myopically was the court of appeals able to conclude there was "no evidence" to support the trial court's conclusion that "consent was freely given at the point of the search when appellant was moved inside and weapons were produced." [6]

When the courts of appeals analyze a trial court's denial of a motion to suppress evidence they must be deferential to the trial court's judgment, not only as to the historical facts, but also as to the legal conclusions to be drawn from the historical facts—at least so long as it appears the trial court has applied the correct standard of law to those historical facts. They should reverse the trial court's decision only for an abuse of

5. Since the trial court did not make any written findings, we can only infer from the conclusion reached what the factual findings must have been.

The State's and appellant's positions were irreconcilable, *viz:* the State claimed that appellant had consented to every part of the search and appellant categorically denied that he had consented to *any* search. For the trial court to have found appellant consented to the entire search, it must have believed the officers' testimony and disbelieved appellant's.

6. The scope of consent is generally defined by its expressed object. See p. 496, *ante*. Here Officer Rosales asked appellant if he could search his person for narcotics. It would not be unreasonable to expect that one's "person" would include, *inter alia*, one's shoes, especially when narcotics, which can many times be hidden in small areas, are the express object of the search.

Also, under this analysis, it would not be unreasonable to view the drawn weapon inside the residence as not vitiating the voluntariness of the consent. The court of appeals held, under its "discrete segments" analysis, that no evidence supported that consent was freely given at the point when appellant was moved inside and weapons were produced. However, viewing this as one continuous occurrence, the consent to search appellant's person for narcotics had already been given outside of the residence, before the gun was drawn. Under this view the drawing of the gun would not necessarily affect the voluntariness of the previously given consent. While "[t]he display of weapons is a coercive factor that sharply reduces the likelihood of freely given consent," *Lowery v. State*, 499 S.W.2d 160, 168 (Tex.Cr.App.1973), it is *only* a factor to be considered in the "totality of the circumstances" and is not alone dispositive. Cf. *Meeks v. State*, 692 S.W.2d 504, 509 (Tex.Cr.App.1985) (whether or not in custody is only a factor); *Id.*, at 510 (whether or not informed had right to refuse consent is only a factor). Furthermore, it is not the presence of a coercive factor which makes consent involuntary but rather that the consent was given *as a result of* the coercion.

discretion; that is to say, only when it appears that the trial court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion.

Because it appears the court of appeals conducted a *de novo* review of the record, instead of deciding whether the trial court abused its discretion in this manner, we vacate its judgment and remand the cause for further analysis and disposition not inconsistent with this opinion.

BAIRD, Judge, dissenting.

The majority engages in a hyper-technical review of the Court of Appeals' decision. While such occurrences are increasingly common, it is nevertheless disconcerting to watch a majority of this Court misconstrue our own precedent. Because the majority does nothing more than substitute its judgment for that of the Court of Appeals, I respectfully dissent.

## I. The Facts

Appellant was arrested and charged with possession of methamphetamine. The arresting officers, Daniel Rosales and Greg Flowers, and appellant testified at the hearing on appellant's motion to suppress the evidence. Rosales testified he was assigned to undercover narcotics and vice investigations when he arrested appellant. On January 9, 1990, Rosales received information from an informant that appellant was to purchase methamphetamine. The informant further informed Rosales that appellant would return to his home after the purchase to package the methamphetamine into smaller quantities for re-sale.

Rosales and Flowers were acquainted with appellant and set up surveillance across the street from the duplex where appellant lived. Approximately 30 minutes later appellant and his companion arrived. Rosales and Flowers approached and asked appellant whether he was "holding." Appellant responded in the negative. Rosales again asked appellant if he was "holding" and appellant replied, "You can check me." Rosales then performed a search of appellant's outer clothing and pockets which revealed no contraband. From his conversations with appellant on prior occasions, Rosales knew that a method of concealing narcotics was to place plastic baggies of drugs against the skin because they could not be felt in a "pat down" search. Rosales asked appellant if they could go inside the duplex so Rosales could check underneath appellant's pants. Appellant consented, stating "[t]here's no problem with that."

Inside the apartment, the officers secured the area by having appellant, his companion, and a roommate who was already inside the apartment sit on a couch in the living room. Appellant lowered his pants while Rosales searched for plastic baggies. Finding no contraband, Rosales next asked appellant to remove his shoes. When appellant removed his right shoe a plastic baggie containing a white powdery substance fell out and appellant attempted to cover the baggie with his foot, pushing it under the couch. Rosales recovered the baggie which contained methamphetamine.

On cross-examination Rosales testified he did not attempt to obtain a search warrant because he did not believe he had probable cause to search appellant. Rosales stated appellant was not under arrest when he and Flowers approached appellant and that appellant was free to walk away. Rosales stated he and Flowers did not display their guns until after they entered the duplex, at which time Flowers drew his gun to secure the area.

Flowers' testimony was similar to Rosales. Inside the apartment, Flowers secured the area and observed Rosales search appellant. Flowers stated that he drew his gun for security reasons when they entered the apartment but he kept the gun at his side as Rosales searched appellant. Flowers saw something fall from appellant's shoe and observed appellant attempt to cover it with his foot.

Appellant testified he lived in the duplex with three other persons. When Rosales and Flowers initially approached him outside the duplex, appellant assumed he was under ar-

rest. Appellant stated Flowers had his gun drawn when the officers first confronted him and asked if he was holding narcotics. Appellant denied having narcotics and Rosales searched his clothing. Appellant did not expressly consent to be searched and did not feel he could have walked away from the officers. After patting down appellant and checking his pockets, Rosales said, "Well, let's go inside and pull a strip search." They entered the apartment and Flowers, gun still drawn, closed the door. At that point appellant asked, "What would stop me from running away if I was holding drugs on me?" Rosales replied, "We could have stopped you like that." Rosales instructed appellant to pull his pants down and appellant complied. Finding no contraband, Rosales then instructed appellant to take his shoes off. After appellant removed his shoe, Rosales spotted a plastic baggie containing drugs under the couch close to where appellant was sitting. Appellant picked up the baggie and handed it to Rosales, who then handcuffed appellant. On cross-examination appellant stated he never gave the officers his consent to search him or his apartment.

At the conclusion of the hearing, the trial judge denied appellant's motion to suppress the evidence and appellant appealed.

## II. The Court of Appeals' Decision

The Court of Appeals held the officers had reasonable suspicion to conduct an investigatory stop of appellant based on the information supplied by the informant. *DuBose*, 864 S.W.2d at 660 (citing *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Cr.App.1983)). Appellant was not in custody at this point and therefore, in order to justify a warrantless search, the State had the burden of proving appellant consented to a search and that his consent was "voluntarily given and not the result of duress or coercion, express or implied." *Ibid.* (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S.Ct. 2041, 2058, 36 L.Ed.2d 854 (1973)). The Court of Appeals concluded the record supported the

trial judge's finding that the *initial outer search* was consensual. *Ibid.*

The Court of Appeals next considered whether the search of appellant's shoes exceeded the scope of appellant's consent to be searched *inside* the apartment. *Ibid.* Relying upon *Florida v. Jimeno*, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), the Court stated, "[t]he test for whether the scope of consent to search has been exceeded asks what a reasonable person would have expected the search to include ... Therefore, the question in this case is what would a reasonably prudent officer have understood appellant's consent to mean." *DuBose*, 864 S.W.2d at 660–661. Because Rosales requested only to search under appellant's pants, the Court determined appellant limited his consent to a search under his pants, but not to his shoes. *Id.*, at 661. The Court further determined appellant did not subsequently consent voluntarily to the search of his shoes because one of the officers had a drawn weapon when Rosales instructed appellant to remove his shoes. *Id.* (citing *Weed v. United States*, 340 F.2d 827, 829 (10th Cir.1965); *and, Lowery v. State*, 499 S.W.2d 160, 168 (Tex.Cr.App.1973)). The Court of Appeals concluded the State failed to prove appellant's consent was freely and voluntarily given and, therefore, the trial judge abused his discretion in failing to suppress the evidence.

## III. Arcila v. State
### A.

In *Arcila v. State*, 834 S.W.2d 357 (Tex.Cr.App.1992), we adopted a broad policy of deference to the courts of appeals.[1] In formulating this policy, we explained:

... Like this Court, the courts of appeals are duty-bound to uphold the constitution and laws of this State and of the United States. *So long as it appears they have discharged that duty conscientiously by impartial application of pertinent legal doctrine and fair consideration of the evi-*

---

1. *Arcila*, like the instant case, addressed the voluntariness of a defendant's consent to a search. The Court of Appeals held that although Arcila's arrest was illegal, his consent was voluntary. *Arcila v. State*, 788 S.W.2d 587 (Tex.App.—Dallas 1990). On discretionary review, we expressly declined to review the Court of Appeals' factual determinations and instead, limited our review to that court's application of the law. *Arcila v. State*, 834 S.W.2d 357 (Tex.Cr.App.1992).

*dence, it is our duty in turn to respect their judgments.* Our principle role as a court of last resort is the caretaker of Texas law, not the arbiter of individual applications. When different versions of the law, including unsettled applications of the law to significantly novel fact situations, compete for control of an issue, it is finally the job of this Court to identify and elaborate which is to control thereafter. *But, except under compelling circumstances, ultimate responsibility for the resolution of factual disputes lies elsewhere. See Meraz v. State,* 785 S.W.2d 146, 152–154 (Tex.Cr.App.1990) (Courts of appeals are the final arbiters of fact questions); *Meeks v. State,* 692 S.W.2d 504, 510 (Tex. Cr.App.1985) (Voluntariness is a fact question).

\* \* \* \* \* \*

... Even if our own decision might have been different on the question presented, we cannot accept the proposition that an appellate court's judgment ought to be subject to reversal on such basis, at least when the evidence is sufficient to support it. Doing so only tends to undermine the respective roles of this and the intermediate courts without significant contribution to the criminal jurisprudence of the State.

*Id.,* at 360–361 (footnote omitted).[2] Thus, under *Arcila* we must determine whether the Court of Appeals fairly addressed the point of error raised, evaluated the point according to settled rules of law, accounted for all evidence relevant to the point of error and reached a conclusion adequately supported by the law and the evidence. *Id.,* 834 S.W.2d at 361.

**B.**

In *Schneckloth v. Bustamonte,* 412 U.S. at 248–249, 93 S.Ct. at 2059, the Supreme Court set out the standard of review to determine whether a defendant's consent to a police request to conduct a warrantless search is voluntary:

> ... when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments re-

quire that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances....

This standard, which directs a reviewing court's attention to the totality of the circumstances surrounding a defendant's purported consent, remains the correct legal standard. *See, Thompson v. Louisiana,* 469 U.S. 17, 23, 105 S.Ct. 409, 412, 83 L.Ed.2d 246 (1984); *and, Brown v. State,* 856 S.W.2d 177, 180 (Tex.Cr.App.1993).

In *Florida v. Jimeno,* 500 U.S. 248, 111 S.Ct. 1801, the Court explained that the standard for measuring the scope of a suspect's consent to search is an objective one in the sense that it directs a court's attention to what the typical person would have understood by the police officer's request to search and purported consent by the defendant. *Id.,* 500 U.S. at 249–253, 111 S.Ct. at 1803–1804. "The scope of a search is generally defined by its expressed object." *Id.,* 500 U.S. at 251, 111 S.Ct. at 1804. However, a defendant may limit the scope of the search to which he consents. *Id.,* 500 U.S. at 251–253, 111 S.Ct. at 1804. In *Jimeno,* the Supreme Court held the defendant's consent to a police officer's request to "search his car" for narcotics extended to a search of the paper bags in the car which, in fact, contained narcotics. *Id.,* 500 U.S. at 251–253, 111 S.Ct. at 1804. Explicit in the Court's reasoning was the fact that the defendant failed to limit the scope of the officer's search when it was objectively reasonable that a search of the car would include any closed containers within the car in which narcotics might be kept. *Id.,* 500 U.S. at 251–253, 111 S.Ct. at 1804.

A review of the Court of Appeal's opinion indicates that Court applied the correct legal principles to the facts of the case. Under *Jimeno,* the scope of a defendant's consent is limited by the parties' objective understanding of what area the search will include. *Id.,* 500 U.S. at 249–253, 111 S.Ct. at 1803–1804. According to the Court of Appeals, Officer

**2.** All emphasis is supplied unless otherwise indi- cated.

Rosales "asked appellant if they could go inside so Rosales could *check underneath appellant's pants.*" *DuBose*, 864 S.W.2d at 657. Appellant consented to that search and lowered his pants so Rosales could check for plastic baggies stuck against appellant's legs. The Court of Appeals found appellant's consent to the search of his pants was very specific and narrow. *Id.*, 864 S.W.2d at 660. Finding no narcotics Rosales then asked appellant to remove his shoes. The Court of Appeals stated: "The record does *not* reflect that additional consent was given when appellant was asked to remove his shoes." *Id.*, 864 S.W.2d at 661 (emphasis added).

The record supports the Court of Appeal's conclusion that appellant had limited his consent to the outer body search and the search under his pants. The record also supports the Court of Appeals conclusion that appellant did not consent to the search of his shoes. The Court of Appeals adequately considered the facts in the record and the Court's reliance upon Officer Flowers' drawn weapon as a determining factor is supported by the law. *See, Lowery*, 499 S.W.2d at 167–168; *and, Paprskar v. State*, 484 S.W.2d 731, 738 (Tex.Cr.App.1972). The Court of Appeals conclusion that Rosales' request to search appellant's shoes was a separate request and was not included in appellant's consent to check under his pants is reasonable and supported by the record and by *Jimeno.*

### IV. The Majority Opinion

The majority holds the Court of Appeals abused its discretion by failing "to afford deference to the trial court's ruling." *Ante*, 915 S.W.2d at 495. I do not believe this to be so. Indeed, after carefully reading the opinion of the Court of Appeals, I am convinced that the only error was the failure to specifically state: "we find the trial judge abused his discretion." To fault the Court of Appeals for failing to use the "magic words" is a hyper-technical review. But, regardless of the linguistics, this was the standard employed by the Court of Appeals. Indeed, the opinion makes it clear that the Court of Appeals deferred to the trial judge. *DuBose*, 864 S.W.2d at 660 ("The trial court concluded

that the entire search was consensual. The record supports this conclusion for the initial outer body search.").

This case presents the precise situation *Arcila* is supposed to control. *Ibid.* Indeed, the majority's "only basis for complaint here is that the . . . Court of Appeals somehow managed to get it wrong." *Arcila*, 834 S.W.2d at 361. The Courts of Appeals hold the power to review the decisions of the trial judges and it is improper for this Court to intervene when the Courts of Appeals do so. Instead, we should follow the policy of deference established in *Arcila*. To act as the majority does today is disrespectful to the courts of appeals and contrary to our own precedent. And, in the end, the majority does nothing more than substitute its judgment for that of the Court of Appeals. *Ante*, at 497, n. 6.

In this case, the Court of Appeals discharged its duty to fairly consider the evidence and conscientiously apply the pertinent legal doctrine. It is our duty in turn to respect the decision of the Court of Appeals. Because the majority does not, I dissent.

OVERSTREET, J., joins this opinion.