TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00140-CR






Aaron Trevino, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF CALDWELL COUNTY, 22ND JUDICIAL DISTRICT


NO. 95-113, HONORABLE JACK ROBISON, JUDGE PRESIDING






PER CURIAM


 A jury found appellant Aaron Trevino guilty of aggravated assault. Tex. Penal Code Ann.
§ 22.02(a)(2) (West 1994). The jury assessed appellant's punishment at fifteen years' imprisonment. 
Appellant raises two points of error. Appellant contends that, during the guilt/innocence phase, the trial
court improperly admitted evidence of an extraneous offense. Additionally, appellant contends that the trial
court abused its discretion during the punishment phase by requiring appellant to display a tattoo to the jury. 
We will affirm the trial-court judgment.




Background Facts


 Because appellant does not complain about the sufficiency of the evidence, we briefly
review the facts to put the issues in context. Appellant was indicted after a drive-by shooting that occurred
on April 22, 1995. The victim was a member of a local street gang, La Rosa Negra (LRN). Appellant
and the driver of the car he was in were members of a rival gang, the East Side Gangsters (ESG). The
drive-by shooting happened soon after appellant and the victim had a fist fight on the courthouse square
in Lockhart. The evidence showed that appellant was the shooter. Appellant's theory at trial was mistaken
identity, specifically that appellant unknowingly drove the automobile while the other individual was the
shooter. 




Extraneous Offense


 By point of error one, appellant contends that the trial court erred by permitting the State
to adduce evidence of an extraneous offense to rebut a defensive theory during the guilt/innocence phase
of trial. The State responds that appellant opened the door to his character and therefore the State properly
rebutted appellant's testimony with his prior conviction, for which he was currently on probation.

 Evidence of a person's character is not admissible for the purpose of proving that he acted
in conformity therewith on a particular occasion, except as evidence of a pertinent trait of his character
offered by an accused, or by the prosecution to rebut the same. Tex. R. Crim. Evid. 404(a)(1). 

 When determining the admissibility of evidence, the trial judge is the initial arbiter of the
legal significance of facts. DuBose v. State, 915 S.W.2d 493, 496-97 (Tex. Crim. App. 1996) (citing
Tex. R. Crim. Evid. 104(a); Montgomery v. State, 810 S.W.2d 372 (Tex. Crim. App. 1990) (opinion
on rehearing on court's own motion)). The court of appeals must limit its review of the trial court's rulings,
both regarding the facts and the legal significance of those facts, to a determination of whether the trial court
abused its discretion. DuBose, 915 S.W.2d at 396-97. Even if the court of appeals would have reached
a different result, as long as the trial court's rulings are at least within the "zone of reasonable disagreement,"
the appellate court should not intercede. Id. 

 During appellant's case-in-chief, appellant was examining directly one of his witnesses who
was a long-time friend of appellant. The following exchange took place:


Attorney: And do you know if Aaron has a child?


Witness: Yes, he does.


Attorney: And how old is the child?


Witness: Maybe close to a year already.


Attorney: And in the time you've known Aaron, have you seen a difference in Aaron
before he had the child and after he had the child?


Witness: Yes, I have.


Attorney: And how would you characterize that difference?


Witness: Well, he wanted to, you know, stop being with -- hanging out with the wrong
crowd, and he said he wanted to get a job and clear his name up. He's always been in
trouble I guess. He wanted to, you know, I guess, be a role -- for his daughter to see that
her father is, you know, a good man, not a thug or whatever, you know, society classifies
people like that. 


Attorney: Okay. And did Aaron ever cry about these kind of things, would he get all
emotional about it?


Witness: Yeah, he did. When we used to go fishing, he used to cry and tell me, you know,
"Chucky, you know, I just sometimes want to move and go away and not even run into
these people anymore."



 Following this questioning, the State asked the trial court for a hearing outside the jury's
presence pursuant to Texas Rule of Criminal Evidence 104. At the hearing, the State argued that, based
upon the above testimony, appellant had opened the door to testimony about his character. The State
wanted to ask appellant's witness a "did you know" question regarding appellant's 1994 felony conviction
and eight-year probated sentence for burglary of a vehicle. The State argued that, since appellant was on
felony probation, the fact that he had to live under specific probation rules and be supervised by the Court
would rebut the defensive theory that appellant wanted to be a role model for his baby and not be
considered a thug. At the hearing, appellant argued that he had not opened the door and the testimony
above did not amount to reputation or character evidence. The trial court allowed the State to cross-examine the witness about appellant's 1994 conviction. Later during the guilt-innocence phase of trial,
records relating to appellant's 1994 burglary conviction were admitted without objection. 

 We hold that appellant opened the door to questions about his character. A witness who
testifies about a defendant's good character may be cross-examined regarding specific misconduct by the
defendant. Drone v. State, 906 S.W.2d 608, 616 (Tex. App.--Austin 1995, pet. ref'd); Tex. R. Crim.
Evid. 405(a). The State properly rebutted the theory of non-propensity evidence by asking a "did you
know" question regarding the 1994 burglary conviction. We overrule point of error one. 




Tattoo Display


 By point of error two, appellant contends that the trial court abused its discretion by
requiring him to display a tattoo to the jury during the punishment phase of trial. While deliberating
appellant's guilt or innocence, the jury sent out two notes asking the trial court if they could see the tattoo
on appellant's right hand. A witness for the State, who had been a passenger in the car in which appellant
was riding, referred to appellant's tattoo as an identifying mark. Since the defendant's theory was
misidentification, appellant questioned this witness closely about his identification of appellant as the shooter. 
The witness testified that he knew that the shooter was appellant because he could see the tattoo on
appellant's right hand, while the driver of the car did not have a tattoo on his right hand.

 The State asked the court to order appellant to show his arms and hands to the jury at the
punishment phase. The State argued that during the guilt/innocence phase of trial, police officers had
witnessed appellant attempting to hide his tattoos under his shirt sleeves. The State argued that the hiding
of the tattoos showed that he was a falsifier of facts, while the tattoo was evidence of appellant's character. 
Appellant, who did not testify at the guilt phase or at the punishment phase, objected that displaying the
tattoo was violative of his right against self-incrimination, that the tattoo was irrelevant, and that the
probative value of the tattoo was substantially outweighed by the prejudicial effect it would have on the jury. 
The trial court overruled appellant's objection and ordered appellant to show the jury the tattoo on his right
hand which reads "mi vida loco." The State's witness translated the tattoo as meaning "my crazy life." 

 Initially, appellant argues that this display amounted to testimonial activity. Without citing
authority, appellant argues that the display violated his privilege against self-incrimination. While there is a
dearth of authority addressing the display of tattoos during the punishment phase of trial, there are cases
addressing the display of tattoos and admission during the guilt/innocence phase of trial. Silvestre v. State,
893 S.W.2d 273, 274-75 (Tex. App.--Houston [1st Dist.] 1995, pet. ref'd); DeLeon v. State, 758
S.W.2d 621, 625 (Tex. App.--Houston [14th Dist.] 1988, no pet.). Ordering a non-testifying defendant
to display a tattoo does not violate a defendant's right against self-incrimination. Id. We hold that if
displaying a tattoo during guilt/innocence does not violate a defendant's right against self-incrimination, then
neither does such a display during the punishment phase.

 Appellant further contends that the display of his tattoo was irrelevant, remote, and
substantially more prejudicial than probative. During the punishment phase, the trial court held a hearing
to determine whether it would grant the State's request to have appellant display the tattoo on his right
hand. The State argued that the tattoo was some evidence of appellant's character. The State argued that
the tattoo exemplified his temperament and explained his character. We disagree. A tattoo is not
admissible as character evidence. However, it is admissible as a distinguishing mark, just as a scar or a
birth mark would be. De Leon, 758 S.W.2d at 625 (citing Whitlock v. State, 338 S.W.2d 721, 723
(Tex. Crim. App. 1960)). We conclude that ordering appellant to display his tattoo was within the trial
court's discretion. 

 Additionally, any error was harmless. At the punishment hearing, the trial court admitted
into evidence many extraneous offenses. When measured against the number and types of extraneous
offenses admitted, the tattoo appears rather insignificant in terms of its inflammatory potential. Harris v.
State, 790 S.W.2d 568 (Tex. Crim. App. 1989); Tex. R. App. P. 81(b)(2). We overrule appellant's
second point of error. 


Conclusion


 We affirm the trial court's judgment of conviction. 


Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: April 10, 1997

Do Not Publish


 By point of error two, appellant contends that the trial court abused its discretion by
requiring him to display a tattoo to the jury during the punishment phase of trial. While deliberating
appellant's guilt or innocence, the jury sent out two notes asking the trial court if they could see the tattoo
on appellant's right hand. A witness for the State, who had been a passenger in the car in which appellant
was riding, referred to appellant's tattoo as an identifying mark. Since the defendant's theory was
misidentification, appellant questioned this witness closely about his identification of appellant as the shooter. 
The witness testified that he knew that the shooter was appellant because he could see the tattoo on
appellant's right hand, while the driver of the car did not have a tattoo on his right hand.

 The State asked the court to order appellant to show his arms and hands to the jury at the
punishment phase. The State argued that during the guilt/innocence phase of trial, police officers had
witnessed appellant attempting to hide his tattoos under his shirt sleeves. The State argued that the hiding
of the tattoos showed that he was a falsifier of facts, while the tattoo was evidence of appellant's character. 
Appellant, who did not testify at the guilt phase or at the punishment phase, objected that displaying the
tattoo was violative of his right against self-incrimination, that the tattoo was irrelevant, and that the
probative value of the tattoo was substantially outweighed by the prejudicial effect it would have on the jury. 
The trial court overruled appellant's objection and ordered appellant to show the jury the tattoo on his right
hand which reads "mi vida loco." The State's witness translated the tattoo as meaning "my crazy life." 

 Initially, appellant argues that this display amounted to testimonial activity. Without citing
authority, appellant argues that the display violated his privilege against self-incrimination. While there is a
dearth of authority addressing the display of tattoos during the punishment phase of trial, there are cases
addressing the display of tattoos and admission during the guilt/innocence phase of trial. Silvestre v. State,
893 S.W.2d 273, 274-75 (Tex. App.--Houston [1st Dist.] 1995, pet. ref'd); DeLeon v. State, 758
S.W.2d 621, 625 (Tex. App.--Houston [14th Dist.] 1988, no pet.). Ordering a non-testifying defendant
to display a tattoo does not violate a defendant's right against self-incrimination. Id. We hold that if
displaying a tattoo during guilt/innocence does not violate a defendant's right against self-incrimination, then
neither does such a display during the punishment phase.

 Appellant further contends that the display of his tattoo was irrelevant, remote, and
substantially more prejudicial than probative. During the punishment phase, the trial court held a hearing
to determine whether it would grant the State's request to have appellant display the tattoo on his right
hand. The State argued that the tattoo was some evidence of appellant's character. The State argued that
the tattoo exemplified his temperament and explained his character. We disagree. A tattoo is not
admissible as character evidence. However, it is admissible as a distinguishing mark, just as a scar or a
birth mark would be. De Leon, 758 S.W.2d at 625 (citing Whitlock v. State, 338 S.W.2d 721, 723
(Tex. Crim. App. 1960)). We conclude that ordering appellant to display his tattoo was within the trial
court's discretion. 

 Additionally, any error was harmless. At the punishment hearing, the trial court admitted
into evidence many extraneous offenses. When measured against the number and types of extraneous
offenses admitted, the tattoo appears rather insignificant in terms of its inflammatory potential. Harris v.
State, 790 S.W.2d 568 (Tex. Crim. App. 1989); Tex. R. App. P. 81(b)(2). We overrule appellant's
second point of error. 


Conclusion


 We affirm the trial court's judgment of conviction. 


Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed