**Opinion issued August 13, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-22-00279-CR

_____

**THE STATE OF TEXAS, Appellant**

**V.**

**ANTHONY ANDREW VALLE, Appellee**

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Case No. 1702650**

## OPINION ON REMAND

After a jury found appellee, Anthony Andrew Valle, guilty of the felony offense of aggravated sexual assault of a child,[1] but before the issue of appellee's

---

[1] *See* TEX. PENAL CODE ANN. § 22.021(a), (e).

punishment was submitted to the jury, the original trial court granted appellee's motion to recuse, and a new trial court was assigned to the case. Appellee then moved for mistrial as to both the guilt phase of trial and the punishment phase of the trial based on Texas Code of Criminal Procedure article 37.07.[2] The new trial court granted appellee's motion for mistrial and set aside the jury's finding of guilt.

On original submission, we addressed the sole issue raised by appellant, the State of Texas, i.e., whether the new trial court erred in granting appellee's motion for mistrial[3] and setting aside the jury's finding of guilt based on an error that affected only the punishment phase of trial. *See State v. Valle*, No. 01-22-00279-CR, 2023 WL 5436435, at *1, *5 (Tex. App.—Houston [1st Dist.] Aug. 24, 2023) (mem. op., not designated for publication) (*Valle I*), *judgment vacated by State v. Valle*, No. PD-0653-23, 2024 WL 178074 (Tex. Crim. App. Jan. 17, 2024) (*Valle II*). In addressing that issue, we noted that the clerk's record reflected that appellee did not make the required written election under the Texas Code of Criminal Procedure's election provision before the commencement of voir dire, making his election untimely. *See Valle I*, 2023 WL 5436435, at *6. Because the record showed that

---

[2]    *See* TEX. CODE OF CRIM. PROC. ANN. art. 37.07, § 2(b) (providing if jury returns finding of guilt in guilt phase of trial, "where the defendant so elects in writing before the commencement of the voir dire examination of the voir dire examination of the jury panel, the punishment shall be assessed by the same jury" (the "election provision")).

[3]    *See id.* art. 44.01(a)(3); *State v. Gallien*, 631 S.W.3d 885, 887 (Tex. App.—Houston [1st Dist.] 2021, pet. ref'd).

2

appellee had waived his statutory right to make the election, we sustained the State's sole issue and held that the trial court erred in granting appellee a mistrial as to the guilt phase of trial.[4] *See id.*

Appellee then filed a petition for discretionary review to the Texas Court of Criminal Appeals, alleging that he had timely filed his written election and the time-stamped date of November 9, 2021 on his written election contained in the clerk's record was a clerical error. *See Valle II*, 2024 WL 178074, at *1. The Court of Criminal Appeals granted appellee's petition for discretionary review, vacated this Court's prior judgment, and remanded the case to this Court, with directions to abate the case so that the trial court could determine whether there had been a clerical error related to appellee's written election. *See id.* On remand, we abated the case and remanded it to the trial court so that the trial court could determine whether the November 9, 2021 time-stamped date was a clerical error and, if so, the date that appellee's written election was filed.

While the case was abated, the trial court held a hearing, after which it entered findings of fact and conclusions of law and a supplemental clerk's record containing

---

[4] We did not reach the question of statutory interpretation raised by the State in our prior opinion because under the circumstances, it would have been improper to do so. Appellate court review may not stray beyond the confines of the record. *Jones v. State*, 564 S.W.2d 718, 721 (Tex. Crim. App. 1978); *Salazar v. State*, 5 S.W.3d 814, 816 (Tex. App.—San Antonio 1999, no pet.); *Burns v. State*, 761 S.W.2d 486, 487 (Tex. App.—Corpus Christi–Edinburg 1988, pet. ref'd).

3

those findings of fact and conclusions of law was filed in this Court. The trial court found that "[a]n accurately time-stamped copy of the request for the jury to assess [appellee's] punishment d[id] not exist" but that appellee "timely filed a request for the jury to assess his punishment before voir dire began in accordance with Texas Code of Criminal Procedure article 37.07[] [section] 2(b)."[5] Accordingly, we now consider whether, as the State contends, the trial court erred in setting aside the jury's finding of guilt based on an error that affected only the punishment phase of trial.

We affirm.

## Background

A Harris County Grand Jury issued a true bill of indictment, alleging that appellee, on or about June 1, 1997, "unlawfully, intentionally and knowingly cause[d] the penetration of the mouth of [the complainant], a person younger than fourteen years of age, with the sexual organ of [appellant]."[6]

Following the guilt phase of trial, the jury found appellee guilty of the felony offense of aggravated sexual assault of a child. The punishment phase of trial then began.

During the punishment phase of trial, the State called a Harris County Sheriff's Office deputy as a witness and questioned him about his participation in an

---

[5] See TEX. CODE OF CRIM. PROC. ANN. art. 37.07, § 2(b) (election provision).

[6] See TEX. PENAL CODE ANN. § 22.021(a).

4

investigation involving an extraneous offense that allegedly occurred at appellee's home on September 20, 2018. Evidence found at the home included a purse and its contents.

Appellee's trial counsel, Sam Cammack, stipulated to the admissibility of the purse into evidence. The State asked Cammack whether appellee was stipulating "to the items inside [the purse]," and Cammack answered that he was. The State then began questioning the deputy about certain photographs depicting the purse and its contents, which had previously been admitted into evidence.

Subsequently, Cammack asked, "for clarification[] of [the] stipulation," as to whether the items were still inside the purse or whether they had been "individually removed from the [purse] and marked" as separate exhibits. The State responded that the contents had been "individually moved . . . out of the purse."

Cammack clarified that if the exhibits were "in the courtroom," he did not "have objections to them being offered." The original trial court asked whether the State was "offering those exhibits," and the State responded that it was. Cammack then objected that "th[o]se exhibits would be the best evidence as opposed to the photographs of them." The trial court reminded Cammack that the photographs had already been admitted into evidence. The State proceeded with its examination of the deputy about the various items that he found in the purse until Cammack asked for a bench conference.

At the bench conference, Cammack explained to the original trial court that he had asked the State "if [it] had" the purse's contents so that Cammack "could present [them]" to the jury if the State was not going to do so, but the State had not brought them "to . . . court." Cammack then "asked [the State] if [it] could retrieve" the purse's contents, but the State told Cammack that it "couldn't get" them until later that afternoon.

The original trial court responded that Cammack "could ask about it on cross[-examination]," but Cammack stated that he "need[ed] the evidence," and because it was in the State's "possession," Cammack could not "retrieve [the purse's contents] unless" the State brought them to him. The trial court replied, "Well, what do you want me to do about it?" and ended the bench conference.

The State continued questioning the deputy about photographs depicting other various pieces of evidence. After Cammack began his cross-examination of the deputy, the original trial court dismissed the jury for "a brief break," called the court into recess, and went off the record. When the trial court went back on the record, it stated:

> Since we were last on the record, [Cammack] engaged in arguments with the court reporter over the admission of evidence. He's engaged in arguments with the [c]ourt repeatedly.
>
> He's been ejected from the courtroom.

6

[Carson Joachim], who's been here for the entirety of the trial with the defense in both guilt/innocence and during punishment, will continue in his place.

We'll be bringing the jury back in to continue.

The trial court then ordered Joachim to "pick up the cross-examination" of the deputy "where [Cammack had] left off."

Joachim, an attorney who had assisted Cammack at certain points during appellee's trial, protested that he had "not been present" in the courtroom for the State's examination of the deputy, except for "the five minutes prior to the exchange" between Cammack and the original trial court. And he was "not really sure of the entire genesis" of the argument between Cammack and the original trial court. In any event, Joachim noted that appellee "ha[d] represented to [Joachim] that he [did] not want [Joachim] to handle th[e] case as the primary attorney or the secondary attorney at th[at] point" and "would prefer to have [Cammack]" represent him. As such, Joachim requested that the trial court give Cammack an opportunity "to visit with [appellee] before continuing" with the punishment phase of trial.

In response, the original trial court stated that it was "not going to proceed with [Cammack]" in the courtroom and "have his disruptions for the remainder of [appellee's] trial." And it stated that if appellee "would like to have another attorney other than [Joachim] represent him, he [could] have them come in now." The original trial court then ordered that the jury be brought back into the courtroom.

7

Before the jury returned, the State interjected that it was "requesting a 20, 30-minute stave off in time to consult regarding what . . . the State's position should be in regard[] to proceeding with [appellee's] case as it is." The State explained that it wanted the "time just to research and confer with [its] appellate [counsel]." The trial court responded that the State "[c]ould do that" or "have someone else do that," but the punishment phase of trial "[was] going to proceed."

After the jury returned to the courtroom, Joachim attempted to cross-examine the deputy until eventually, the State requested a bench conference, and the trial court granted the request. The following exchange then occurred:

[The State]: . . . [T]he State just wants to re-urge for time for counsel to continue to have time to evaluate this witness [be]cause he didn't hear most of the direct. And we'd like to just take up again outside the presence of the jury to discuss the best path going forward as far as --

THE COURT: Please proceed.

The State then questioned the deputy on redirect. When the State's redirect was completed, the original trial court informed the jury that the proceeding would "break for lunch." After the jury left the courtroom, the trial court had the bailiff bring Cammack back into the courtroom, and the original trial court made the following statement:

Mr. Cammack, you will not speak until I give you permission to speak.

8

Your behavior since this case has been pending in front of me has been reprehensible. The rudeness that you've displayed to the district attorney's office and to everyone in [the] court including myself has been reprehensible.

Your disruptions throughout this trial from when it began in November until today have been reprehensible. I'm going to ask: Are you going to conduct yourself in this courtroom in a professional manner, yes or no?

Cammack responded that he was "going to [his] office and filing a motion to recuse." And the trial court replied, "You may do so," and then went off the record.

Back on the record, Joachim made the following statement:

. . . My participation [in appellee's trial] has been consistent, but still in and out of the courtroom at various times. I do not feel prepared to the point that it could marginally be ineffective at some point along the way if I continue to participate in this trial.

. . . [O]ut of full fairness to [appellee], he does not want me to move forward as his primary attorney. He has indicated to me -- and I can have him put that on the record -- that he would prefer [Cammack] to be his lawyer moving forward.

We would at least like a continuance briefly -- I know that [the State] has asked for that as well -- so that we can kind of collect our thoughts.

I have a lot of respect for this [c]ourt and I hope you know that. I do. And I appreciate, you know, the liberty that you've given me here.

But at the same time, I need to do what's not only best for [appellee], but also best for me professionally moving forward. No disrespect to the [c]ourt. I enjoy being in your courtroom. It's not that at all.

So, I respectfully ask for a continuance, at a minimum. If we can't do that, then I would obviously ask for a mistrial, if -- you know,

I would have to urge that at this particular point in time. But I think it's fair if we put [appellee] on the record indicating to the [c]ourt that he does not want me to be his attorney moving forward, if you would allow me to do that.

Appellee then testified that he had hired Cammack as his primary attorney and Cammack had helped appellee prepare for both the guilt and punishment phases of trial. Appellee stated that he did not meet Joachim until the beginning of his trial and Joachim's participation had been limited, for the most part, to the times that Joachim had appeared in the courtroom for the purposes of the trial. Appellee explained that he had never conferenced or prepared for trial with Joachim and he had not reviewed any evidence with Joachim. And appellee confirmed that he wanted Cammack to be his "primary attorney" in the case and did not want Joachim to represent him "going forward."

Following appellee's testimony, the original trial court recessed. When the trial court returned, Cammack appeared in the courtroom and the following colloquy took place:

| THE COURT: | [Appellee] would like to proceed with [Cammack]. I do not want the behavior and the disruption to be prejudiced against [appellee]. I'm going to allow [Cammack] to proceed, but [he] cannot be disruptive and disrespectful to this [c]ourt any longer. |
| [Cammack]: | May I speak, Judge? |
| THE COURT: | No. |

10

| | |
|---|---|
| [Cammack]: | Okay. |
| THE COURT: | We're going to bring in the jury to -- |
| [Cammack]: | Well, I just want to let the [c]ourt know one thing. |
| | I have notified the administrative law judge that I . . . file[d] a motion to recuse. . . . |
| | And I believe the proper remedy . . . is to halt the trial until we've had a motion to recuse hearing. |

The trial court then brought the jury into the courtroom and stated that the court would be in recess.

After a hearing on appellee's motion to recuse, the motion was granted, and appellee's case was assigned to the 338th District Court of Harris County, Texas. Appellee then filed a motion for mistrial.

In his motion, appellee asserted that he "was deprived of his Sixth Amendment right to counsel[7] when the [original] trial court . . . ordered another lawyer . . . take over [appellee's] trial . . . , over the objection of both [appellee] and [his] new counsel." Appellee also maintained that he "ha[d] not waived or limited the scope of [Texas Code of Criminal Procedure section 37.07]." Thus, according

---

7    *See* U.S. CONST. amend. VI.

to appellee, "the only remedy available to afford [him] his right to [d]ue [p]rocess, [wa]s to grant a mistrial and place [appellee] in his original, pretrial status pending a new trial on the merits."

In his brief in support of the motion for mistrial, appellee noted that he had filed a motion for mistrial "at the conclusion of the State's case-in-chief," which was denied, and he had subsequently filed his motion to recuse the original trial court. Appellee observed that "[t]he Sixth Amendment violation that formed the basis of [his motion for mistrial] was addressed in [his] [m]otion for [r]ecusal." Appellee then recited the circumstances that precipitated the original trial court's removal of Cammack from the courtroom during the punishment phase of appellee's trial.

Appellee also referred to the thirteen instances of "conduct exhibited by the [trial court]" that he had set forth in his motion to recuse, which was attached as an exhibit to his motion for mistrial. According to appellee, such conduct, which "occurred during both the guilt[] and punishment phase[s] of . . . trial," "showed a complete lack of impartiality" and the original trial court's "bias against [appellee]."

In asserting that the original trial court had violated his Sixth Amendment right to counsel, appellee cited specifically to the original trial court's removal of Cammack from the courtroom, his order that Joachim represent appellee and cross-examine the deputy, and his later order that Cammack return to the courtroom.

12

Appellee argued that he was entitled to a "mistrial as to both phases of the bifurcated trial" because he had invoked the election provision[8] and thus was "statutorily entitled to have punishment heard by the same jury that [had] adjudicated him [guilty]."

In its response to appellee's motion for mistrial, the State asserted that the trial court could "not grant a new trial on guilt for error that occurred during the punishment phase" of appellee's trial.

After a hearing on appellee's motion, the trial court granted appellee's motion, declared a mistrial, discharged the jury "from all further consideration of th[e] matter," placed appellee "in his original pretrial status with the pretrial bonds reinstated," and adjourned the case "for a new trial at a later date."

**Standard of Review**

When, as here, the trial court's order granting a mistrial is rendered after the guilty verdict, but before the punishment verdict, the order, for purposes of its appealability, is functionally indistinguishable from an order granting a new trial because it returns the case to the posture it was in before trial. *State v. Gallien*, 631 S.W.3d 885, 890, 891 (Tex. App.—Houston [1st Dist.] 2021, pet. ref'd). "[W]hen an order is functionally indistinguishable from or the functional equivalent of an

---

[8] *See* TEX. CODE OF CRIM. PROC. ANN. art. 37.07, § 2(b).

13

order granting a new trial, a reviewing court can look past the label assigned to the order by the trial court." *State v. Boyd*, 202 S.W.3d 393, 400 (Tex. App.—Dallas 2006, pet. denied); *see also State v. Savage*, 933 S.W.2d 497, 499 (Tex. Crim. App. 1996); *State v. Evans*, 843 S.W.2d 576, 577 (Tex. Crim. App. 1992).

We review a trial court's ruling on a motion for mistrial under an abuse-of-discretion standard. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). The test for abuse of discretion is not whether, in the opinion of the appellate court, the facts present an appropriate case for the trial court's action, but rather, "whether the trial court acted without reference to any guiding rules or principles." *State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007); *Gallien*, 631 S.W.3d at 891. A trial court abuses its discretion when it applies "an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and facts viewed in the light most favorable to its legal conclusion." *DuBose v. State*, 915 S.W.2d 493, 497–98 (Tex. Crim. App. 1996), *overruled on other grounds by Guzman v. State*, 955 S.W.2d 85, 90 (Tex. Crim. App. 1997).

### Motion for Mistrial

In its sole issue, the State argues that the trial court erred in granting appellee's motion for mistrial as to the guilt phase of trial because the trial court's error affected only the punishment phase of appellee's trial.

In his motion for mistrial, appellee, as his sole basis for claiming that he was entitled to a mistrial as to the guilt phase of trial, relied on the election provision, which, he asserted, gave him the right to have the same jury that decided his guilt also decide his punishment. The election provision states:

> Except as provided by [Texas Code of Criminal Procedure] [a]rticle 37.071 or 37.072, if a finding of guilty is returned, it shall then be the responsibility of the judge to assess the punishment applicable to the offense; provided, however, that . . . where the defendant so elects in writing before the commencement of the voir dire examination of the jury panel, the punishment shall be assessed by the same jury, except as provided in [s]ection 3(c) of this article and in [a]rticle 44.29.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 2(b).

Courts must interpret a statute according to the plain meaning of its text "unless the text is ambiguous or the plain meaning leads to absurd results that the legislature could not possibly have intended." *Cont'l Heritage Ins. Co. v. State*, 683 S.W.3d 407, 411 (Tex. Crim. App. 2024). "In determining plain meaning, we may resort to standard dictionaries, and we apply the canons of construction." *Id.*; *see Dunham v. State*, 666 S.W.3d 477, 484 (Tex. Crim. App. 2023) (explaining canons of construction include "a list of presumptions regarding legislative intent"); *see generally* TEX. GOV'T CODE ANN. § 311.021. "[W]e read words and phrases in context and construe them according to rules of grammar and common usage." *Watkins v. State*, 619 S.W.3d 265, 272 (Tex. Crim. App. 2021).

15

We understand the common meaning of "same jury" in the election provision in the same way that the Texas Court of Criminal Appeals explained it in *Ex parte Pete*: "A defendant who has followed the procedural steps necessary to trigger his statutory right to jury assessment of punishment has the statutory right to have that punishment assessed by the same jury as the one that found him guilty." 517 S.W.3d 825, 831 (Tex. Crim. App. 2017) (internal quotations omitted).

The election provision expressly includes two exceptions. The first, which appears at the beginning of the provision, involves repeat-sex-offender and other non-death-penalty capital felony cases, and thus does not apply here. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 2(b); *see also id.* arts. 37.071, 37.072. The other express exception involves Texas Code of Criminal Procedure article 37.07, section 3(c) and article 44.29. Article 44.29 applies only to appellate court proceedings. *See id.* art. 44.29 ("Appeal and Writ of Error").

Article 37.07, section 3(c) applies to trial courts, but only when the trial court declares a mistrial because of a hung jury,[9] which is not the case here. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(c) ("*In the event the jury shall fail to agree on the issue of punishment*, a mistrial shall be declared only in the punishment phase

---

[9]   *See, e.g.*, *Ex parte Zavala*, 900 S.W.2d 867, 870 n.4 (Tex. App.—Corpus Christi–Edinburg 1995, no pet.) (explaining trial court may discharge hung jury if parties consent or if jury cannot agree and "has been kept together for such time as to render it altogether improbable that it can agree").

16

of the trial, the jury shall be discharged, and no jeopardy shall attach." (emphasis added)); *Ex parte Pete*, 517 S.W.3d at 831 & n.10 (observing mistrial based on irremediable error or misconduct occurring during punishment phase is not exception to election provision's right to same jury).

The State also asserts that Texas Rule of Appellate Procedure 21.9 "prohibits a trial court from setting aside a finding of guilt based on error that affected only the punishment phase" of trial. Rule 21.9 provides:

> A court must grant a new trial when it has found a meritorious ground for new trial, but a court must grant only a new trial on punishment when it has found a ground that affected only the assessment of punishment.

TEX. R. APP. P. 21.9. But this rule "refers only to a trial court's authority to grant a new trial on punishment, not its authority to grant a mistrial on punishment." *State v. Bounhiza*, 294 S.W.3d 780, 786 (Tex. App.—Austin 2009, no pet), *disapproved of on other grounds by Ex parte Pete*, 517 S.W.3d at 831; *see also* TEX. R. APP. P. 21.9(a); *Ex parte Pete*, 517 S.W.3d at 830 (noting "mistrial practice in criminal cases in Texas is flexible" and "largely a creature of the common law," given that Texas Code of Criminal Procedure "gives little concrete guidance" in handling mistrials granted because of "procedural error or serious misconduct occurring during the proceedings"). Texas Rule of Appellate Procedure 21.9 thus does not apply here.

Finally, the State suggests that "when a trial court grants a motion that is the functional equivalent of a motion for new trial—regardless of what the defendant

chooses to call it—appellate courts should look past the label," as we do in determining appealability, "and treat the motion as a motion for new trial." *See, e.g.*, *Gallien*, 631 S.W.3d at 891. In making this suggestion, though, the State fails to recognize that when, as here, the defendant has preserved his statutory right to have "the same jury" that found him guilty also assess his punishment, granting a mistrial only as to the punishment phase "could very well violate" his preserved right. *Ex parte Pete*, 517 S.W.3d at 832. We decline to fashion a new common-law rule that would potentially conflict with existing law.

The State has not identified any legal authority that would have barred the trial court from granting Valle's motion for mistrial as to both the guilt phase of trial and the punishment phase of trial, and we find none. Thus, we hold that the trial court did not err in granting Valle's motion for mistrial as to both phases of trial.

We overrule the State's sole issue.

## Conclusion

We affirm the order of the trial court.


Julie Countiss
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.

Publish. TEX. R. APP. P. 47.2(b).

18