**Perry Douglas SMITH, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 04–85–00540–CR.**

Court of Appeals of Texas,
San Antonio.

Dec. 10, 1986.

Lawrence F. Harrison, Junction, for appellant.

Ronald L. Sutton, Dist. Atty., Junction, for appellee.

Before CADENA, C.J., and REEVES and DIAL, JJ.

## OPINION

REEVES, Justice.

Perry Smith was convicted for possessing more than four ounces but less than five pounds of marihuana. He was assessed ten years probation and a $5,000.00 fine.

The heart of this case is the constitutionality of using an arrest warrant as a pre-text to conduct a warrantless search and seizure. The arresting officer suspected appellant was growing marihuana and entered his property under the guise of executing a valid arrest warrant. We must determine whether the motives and intent of the officer are factors in determining the reasonableness of the search under the Fourth Amendment of the U.S. Constitution and Article One, Section Nine of the Texas Constitution.

On October 23, 1984, the City of Fredericksburg, Gillespie County, issued a warrant for Perry Douglas Smith's arrest in connection with a speeding ticket he received earlier that month. It sent a copy of the warrant to the Kimble County Sheriff. The record does not reflect when it was received. However, it remained unserved in the sheriff's department until May 24, 1985.

On that date, Deputy Sheriff Kenneth Cogburn met with Chief of Police Larry James.[1] James mentioned he had information that marihuana was growing on the property where Smith was living. At that point, Cogburn connected Smith with the arrest warrant. Cogburn returned to his office, pulled the arrest warrant and called Fredericksburg to verify that it was still outstanding. After verification, Cogburn and Deputy David Butcher drove to Smith's residence to execute the warrant.

Smith lived in a trailer home in a rural area. Upon arrival, Deputy Cogburn saw marihuana growing in an open garden approximately 25 feet from the trailer. He knocked on one of the trailer's two doors. When no one answered, he went to the other door, which was open. From the door, Cogburn saw eighteen potted marihuana plants sitting near a window inside the trailer home. Deputy Cogburn called out Smith's name. When Smith appeared and identified himself, Cogburn arrested him on the outstanding warrant and for possession of marihuana. A companion living with Smith in the trailer was also arrested. Deputy Cogburn transported

1. The record does not reflect of which city James is chief of police.

Smith and his companion to the Kimble County Jail while Deputy Butcher remained on the premises. After turning the two over to jail authorities Cogburn, along with Sheriff Davis and Chief of Police James, returned to the property to conduct a search. In the course of that search they found three marihuana gardens and numerous potted marihuana plants. They also found mail, clothing, jewelry, and other personal items belonging to Smith.

Smith raises three points of error. First, that the evidence should have been suppressed because the arrest warrant was used as a pretext to conduct a search; second, that transporting him to jail broke the "chain of events" and therefore required the officers to obtain a search warrant before returning to search the property; and third, that the State failed to prove Smith possessed the marihuana.

Smith contends that all evidence seized should have been suppressed since the arrest warrant was used as a pretext to conduct a warrantless search. This aspect of the case seems to be one of first impression. While previous cases have discussed the use of a warrantless arrest as a pretext to conducting a search of an automobile,[2] there are no Texas cases which discuss the use of an arrest warrant as a pretext to conducting a search.

However, at least one other jurisdiction has held that an officer who uses an arrest warrant as a pretext to get onto a premises does not violate an individual's Fourth Amendment protections. *State v. Bruzzese,* 94 N.J. 210, 463 A.2d 320 (1983), *cert. denied,* 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984). In *Bruzzese,* the defendant Bruzzese was suspected of burglary. John Hicks, the officer in charge of the burglary investigation ran a routine check of Bruzzese's criminal record and discovered an outstanding arrest warrant issued by a local municipal court. Soliciting the assistance of the police department of the city where Bruzzese lived, Hicks

went to Bruzzese's home to execute the warrant. After being placed under arrest, Bruzzese asked to go to his bedroom to get shoes and a jacket before going outside. Hicks followed Bruzzese to the bedroom where he saw evidence which he believed tied Bruzzese to the burglary. The evidence was seized and later introduced at trial. On appeal, Bruzzese argued that Hicks' use of the arrest warrant as a pretext to get onto the premises violated the Fourth Amendment of the United States Constitution and therefore the evidence seized should have been suppressed.

The New Jersey Supreme Court noted that in cases where an arrest warrant is used as a pretext to get onto a premises, a "fundamental question [is] whether the court should consider the subjective motives and intent of a law enforcement officer in determining the reasonableness of a search and seizure under the Fourth Amendment." *Bruzzese,* 463 A.2d at 322. The court held that the proper inquiry for determining the constitutionality of a search-and-seizure is whether the conduct of the law enforcement officer who undertook the search was objectively reasonable, without regard to the officer's underlying motives or intent. *Id.* at 325; *see Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). We agree.

■ We hold that the subjective intent of the officer does not in and of itself invalidate an otherwise valid arrest, search and seizure. So long as the circumstances, viewed objectively, support the arrest, search and seizure, there is no violation of either the Fourth Amendment to the U.S. Constitution or Article I, Section 9 of the Texas Constitution.

■ It is undisputed the arrest warrant was valid and outstanding at the time served. Deputy Cogburn had a right to be on the premises to serve the warrant. While executing the warrant, the deputy

---

**2.** *See for example, Dodson v. State,* 646 S.W.2d 177 (Tex.Crim.App.1983), and cases cited therein.

saw marihuana growing in an open field outdoors and in plain view inside the trailer. An officer may seize what he sees in plain sight or in open view if he is lawfully at that location. *Miller v. State*, 608 S.W.2d 684, 685 (Tex.Crim.App.1980).

We point out that the court's holding is limited upon the facts in this case. It should not be construed as saying an officer may always use an arrest warrant as a pretext to get onto a premises and conduct a search. However, in situations where: (1) a valid arrest warrant exists, (2) the officer has a legal right to be where he is, and (3) the evidence seized is in plain view, then the officer's subjective intent will not invalidate an otherwise valid arrest, search and seizure.

Appellant's point of error is overruled.

Appellant also complains that the trial court should have suppressed the marihuana found in two other gardens which was discovered by the officers after appellant was transported to jail. He claims that the arrest and transportation to jail was a break in the chain of events which made it necessary for the officers to obtain a search warrant before searching for marihuana not visible to them at the time of arrest. In support, Smith cites *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) and *Branum v. State*, 635 S.W.2d 185 (Tex.App.—Tyler 1982, no pet.). Neither case is applicable.

*Branum* deals with an inventory search of a locked car trunk. *Chimel* concerns a search which went beyond the defendant's person and his immediate reach to encompass an entire house, including desk drawers and other closed and concealed areas. In this case the marihuana was in an open garden outside and could be seen by the officers as they approached the trailer where appellant resided.

Under these facts, we believe the "open fields" doctrine applies. The doctrine is based upon the premise that the Fourth Amendment accords "special protection ... to the people in their 'persons, houses, papers and effects,' [but] is not

extended to open fields." *Hurwitz v. State*, 673 S.W.2d 347, 349 (Tex.App.—Austin 1984), *aff'd on other grounds*, 700 S.W.2d 919 (Tex.Crim.App.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986) (*citing Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924)); *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). An "open field" need not be "open" or "a field" as those terms are commonly used. A fenced, thickly wooded area may be an open field for purposes of Fourth Amendment analysis. *Hurwitz*, 673 S.W.2d at 349 (*citing Oliver v. United States*, 466 U.S. 170, 179, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214 (1984)). The term may be defined as "any unoccupied or undeveloped area outside the curtilage" of a dwelling. *Id.* "Curtilage" is a common law concept referring to the area immediately adjacent to the home to which the intimate activity of home life extends. *Id.*

In this case, the first batch of marihuana seen by the officers was growing in an open garden approximately 25 feet from the trailer. Cogburn could see the marihuana as he drove up. From the first garden, a second garden of marihuana could be seen. From the second garden, a third garden of marihuana could be seen. All the marihuana seized after Smith was taken into custody was being grown outside and in the open.

Smith had no legitimate expectation of privacy concerning these gardens. *Hurwitz*, 673 S.W.2d at 349–350. · Consequently, Fourth Amendment protection is not accorded to these open field areas. Therefore, no search warrant was required.

This point of error is also overruled.

Appellant finally contends that the marihuana seized was inadmissible since there was insufficient evidence to prove possession. To establish the unlawful possession of a controlled substance, the State must prove: (1) the accused exercised care, control and management over the contraband, and (2) the accused knew the matter possessed was contraband.

*McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App.1985). Whether the theory of prosecution is sole or joint possession, the evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and that he exercised control over it. *Nunn v. State*, 640 S.W.2d 304, 305 (Tex.Crim.App.1982). That affirmative link can be established by showing additional facts and circumstances which indicate the accused's knowledge and control of the contraband. *Pollan v. State*, 612 S.W.2d 594, 596 (Tex.Crim.App.1981). Among such additional facts which can establish the affirmative link are: the marihuana was in open or plain view; the place where the contraband was found was enclosed; when the marihuana was found, there was sufficient light for a person to see that marihuana; the amount of marihuana found; and the narcotic was conveniently accessible to the accused. *Id.*

In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the verdict to ascertain whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. State*, 672 S.W.2d 801, 803 (Tex. Crim.App.1984). In the instant case, Smith and his companion were the only two people on the property. Cogburn had met Smith on the property and talked to him three months earlier. At least three times at trial, officer Cogburn testified, without objection, that the trailer was the appellant's residence. Cogburn also testified without objection that he saw jewelry, clothing, and personal items of Smith's in the trailer. Inside the trailer and within plain view were eighteen potted marihuana plants, drug paraphernalia, items used to process marihuana, marihuana being processed and processed marihuana.

No more than 25 feet from the trailer was a garden of marihuana plants with some plants 5 to 6 feet tall. The garden was plainly and easily visible from several parts of the trailer. A garden hose ran from the trailer to the second marihuana garden. The first two outdoor gardens were within 25 feet of the trailer and the third garden was no more than 40 feet from the trailer. Officer Cogburn testified that it was possible the garden hose running from the trailer could reach all three gardens. Finally, the location was rural and residential. In light of this evidence, we cannot say the jury could not have found possession beyond a reasonable doubt.

Appellant's final point of error is overruled.

The judgment of the trial court is affirmed.