State v. Sharon Klima
















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-231-CR

     THE STATE OF TEXAS,
                                                                              Appellant
     v.

     SHARON KLIMA,
                                                                              Appellee
 
 
From the 82nd District Court
Falls County, Texas
Trial Court # 92-10-06430-CR
                                                                                                                 

 O P I N I O N
                                                                                                                 

      The State indicted Appellee Sharon Klima for the felony offense of possession of a usable
quantity of marihuana in the amount of 200 pounds or less but more than 50 pounds. See Act of
May 18, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2939, amended by Act
of May 29, 1993, 73rd Leg., R.S., ch. 900, § 2.02, 1993 Tex. Gen. Laws 3586, 3708-9 (current
version at Tex. Health & Safety Code Ann § 481.121(b)(5) (Vernon Supp. 1997)).



      The court granted Klima’s motion to suppress. On original submission, we affirmed. State
v. Klima, 910 S.W.2d 15 (Tex. App.—Waco 1995), rev’d, 934 S.W.2d 109 (Tex. Crim. App.
1996). The State argued for the first time on appeal that Klima lacked standing to contest the
validity of the search which resulted in the seizure of the contraband. We held that by failing to
address the standing issue before the trial court, the State could not assert it for the first time on
appeal. Id. at 19. On discretionary review, the Court of Criminal Appeals determined that the
State may raise standing for the first time on appeal and remanded this cause to us “for further
proceedings not inconsistent with [its] opinion.” Klima v. State, 934 S.W.2d 109, 111-12 (Tex.
Crim. App. 1996).
      The State asserts in two points that the court erred in granting the motion to suppress because:
(1) officers had observed a portion of the seized marihuana growing in an open field; and (2) Klima
lacks standing to contest the search and resulting seizure.
FACTUAL BACKGROUND
      Acting on an anonymous tip and an invalid search and arrest warrant, officers with the Falls
County Sheriff’s Department and the Department of Public Safety conducted aerial surveillance of
property belonging to Paul Wilson to confirm an anonymous report that he was growing marihuana
there.


 Sheriff Larry Pamplin and Deputy Ben Kirk observed marihuana growing on Wilson’s
property. DPS Investigator John Clark Foster confirmed these observations and briefly circled the
property until other officers could arrive at the location. Foster landed the helicopter on Wilson’s
property.
      The officers observed Wilson walking away from a barn. Pamplin called him by name, and
he walked over to the Sheriff. Pamplin read Wilson the Miranda warnings and advised that the
officers had a search warrant for his property. He asked Wilson if he had marihuana growing on
his property, which Wilson admitted.
      Wilson then showed the officers several areas where marihuana was located:
      ●    170 marihuana plants growing in six rows near a pond in the woods behind his house;
      ●    ten marihuana plants growing near the house;
      ●    marihuana in a barn located near the house; and
      ●    marihuana in a bedroom inside the house.
The officers arrested Wilson pursuant to the warrant and seized the contraband.
      Klima lived with Wilson. She was not present when the officers arrested him. She
surrendered several days later. Witnesses told Kirk the day of Wilson’s arrest that Klima lived with
him. Pamplin testified that he believed Klima “to be the common law girlfriend, wife, what have
you, of Paul Wilson.” Wilson also informed the officers that Klima and her children lived with
him. Video evidence reveals several instances where Pamplin asked Wilson the whereabouts of
his “wife” and whether she knew about the marihuana he was growing. 
      The trial court found that Klima lived on the premises with Wilson. It also found that
“Pamplin announced immediately upon stepping out of the landed helicopter that he had a warrant
for Wilson and that he was under arrest.”
      The court concluded that “[t]he legal basis for entry and subsequent search of the premises was
exclusively the arrest and search warrant issued by the Justice of the Peace. Even though the
contraband was visible from an aerial viewpoint, such inspection and conclusion came subsequent
to the issuance of the warrant and formed no part of the supporting affidavit.” The court also
concluded that “[a]ny statements or actions by Paul Wilson were involuntary. The Miranda
warnings were insufficient to break the causal connection between the illegal arrest and the
subsequent statements and tour of the property given by Wilson.”
THE STANDARD OF REVIEW
      In a suppression hearing, the court is the finder of fact and determines the credibility of the
witnesses and the weight to be given their testimony. DuBose v. State, 915 S.W.2d 493, 496 (Tex.
Crim. App. 1996). The only question for us is whether the court abused its discretion in making
these determinations. Id. We will affirm if the court’s decision is correct on any theory of law
applicable to the case. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). We will
not substitute our judgment for the court’s as long as the court’s decision lies within the “zone of
reasonable disagreement.” DuBose, 915 S.W.2d at 496-97 (quoting Montgomery v. State, 810
S.W.2d 372, 391 (Tex. Crim. App. 1990) (on rehearing)).
STANDING
      The State’s second point avers that Klima lacks standing to contest the search. A person
establishes standing to contest an illegal search by demonstrating a reasonable expectation of
privacy in the area searched. Chapa v. State, 729 S.W.2d 723, 729 (Tex. Crim. App. 1987); State
v. Bassano, 827 S.W.2d 557, 559 (Tex. App.—Corpus Christi 1992, pet. ref’d). The test for
determining whether the accused has demonstrated a reasonable expectation has two components:
      (1)  did the conduct of the accused exhibit “an actual (subjective) expectation of
privacy[;]” and
      (2)  if so, was the expectation “one that society is prepared to recognize as
‘reasonable[.]’”
Smith v. Maryland, 442 U.S. 735, 740, 99 S. Ct. 2577, 2580, 61 L. Ed. 2d 220 (1979) (quoting
Katz v. United States, 389 U.S. 347, 361, 88 S. Ct. 507, 516, 19 L. Ed. 2d 576 (1967) (Harlan,
J., concurring)); Bassano, 827 S.W.2d at 559. 
      Generally, the community property laws of our state provide an accused with a reasonable
expectation of privacy in community property. Bassano, 827 S.W.2d at 560. However, this
general rule must be qualified by the open fields doctrine. See Hester v. United States, 265 U.S.
57, 59, 44 S. Ct. 445, 446, 68 L. Ed. 898 (1924); Oliver v. United States, 466 U.S. 170, 177-79,
104 S. Ct. 1735, 1741-42, 80 L. Ed. 2d 214 (1984). An “asserted expectation of privacy in open
fields is not an expectation that ‘society recognizes as reasonable.’” Id., 466 U.S. at 179, 104 S.
Ct. at 1741-42.
      The protections of the Fourth Amendment extend to people in their homes and effects. Hurwitz
v. State, 673 S.W.2d 347, 349 (Tex. App.—Austin 1984), aff’d, 700 S.W.2d 919 (Tex. Crim.
App. 1985). It similarly protects the curtilage of a home. Oliver, 466 U.S. at 180, 104 S. Ct. at
1742; Rosalez v. State, 875 S.W.2d 705, 713 (Tex. App.—Dallas 1993, pet. ref’d). These
protections do not extend to “unoccupied or undeveloped area[s] outside of the curtilage.” Oliver,
466 U.S. at 180 n.11, 104 S. Ct. at 1742 n.11.
      We examine four factors to determine whether a particular area lies within the curtilage of a
home:
      (1)  the proximity of the area to the home;
      (2)  whether the area is included with the home in a common enclosure;
      (3)  the purposes for which the area is used; and
      (4)  the steps taken by the owner to shield the area from passers-by.
United States v. Dunn, 480 U.S. 294, 301, 107 S. Ct. 1134, 1139, 94 L. Ed. 2d 326 (1987);
Rosalez, 875 S.W.2d at 713. In considering these factors, we must determine “whether the area
in question is so intimately tied to the home itself that it should be [protected by the Fourth
Amendment].” Dunn, 480 U.S. at 301, 107 S. Ct. at 1140; accord Rosalez, 875 S.W.2d at 713.
      A barn located 100 yards away from a house has been determined to be within the curtilage
of that house. McGlothlin v. State, 705 S.W.2d 851, 857 (Tex. App.—Fort Worth 1986), rev’d
on other grounds, 749 S.W.2d 856 (Tex. Crim. App. 1988); see also Cantu v. State, 557 S.W.2d
107, 109-10 (Tex. Crim. App. 1977) (chicken coop 100-125 feet from home within curtilage). 
Conversely, “[a]n ‘open field’ need not be ‘open’ or a ‘field’ as those terms are commonly used;
a fenced, thickly wooded area may be an open field for purposes of fourth amendment analysis.” 
Rosalez, 875 S.W.2d at 714 (citing Oliver, 466 U.S. at 180 n.11, 104 S. Ct. at 1742 n.11; accord
Hurwitz, 673 S.W.2d at 349.
      The record reveals that Wilson showed the officers six rows of marihuana plants growing near
the pond.


 The video evidence depicts an area surrounding the house where the lawn is maintained. 
Kirk testified that the pond area was located “just a short ways” west from a sign reading “No No
Land.” The video tape depicts this sign at the edge of the maintained lawn. A thickly wooded area
lies beyond the sign. The video shows Wilson and the officers walking through this wooded area
before arriving at the pond. It also depicts them leaving the pond area by walking along a narrow
path through the woods before returning to the lawn.
      The area where this marihuana was growing was not “so intimately tied to the home itself” as
to require protection by the Fourth Amendment.


 See Dunn, 480 U.S. at 301, 107 S. Ct. at 1140;
Rosalez, 875 S.W.2d at 713. Rather, it was an “open field.” Id. at 714 Thus, Klima had no
reasonable expectation of privacy in this area. Oliver, 466 U.S. at 179, 104 S. Ct. at 1741-42.
      The officers recovered the other marihuana inside the barn, “near the house,” and inside a
bedroom in the house. Clearly the home is an area protected by the Fourth Amendment. Hurwitz,
673 S.W.2d at 349. We cannot say from the record before us that the barn or the area “near the
house” where marihuana was growing lies outside the curtilage of the home. McGlothlin, 705
S.W.2d at 857. Thus, we conclude that Klima had a reasonable expectation of privacy with respect
to these areas. Bassano, 827 S.W.2d at 559-60.
      Because the marihuana recovered near the pond was located in an open field, Klima had no
reasonable expectation of privacy in this area. Oliver, 466 U.S. at 179, 104 S. Ct. at 1741-42. 
Thus, she lacks standing to complain of the search and seizure of the marihuana from this area. 
Chapa, 729 S.W.2d at 729.
      However, we cannot say that the court abused its discretion in implicitly concluding that Klima
had a reasonable expectation of privacy in the home and its curtilage. See DuBose, 915 S.W.2d
at 496. Pamplin testified that he believed Klima and Wilson had a common law marriage. Wilson
and others advised the officers that she lived with him. The videotape reveals several instances
where Pamplin asked Wilson the whereabouts of his “wife” and whether she knew about the
marihuana he was growing. Thus, the record contains some evidence supporting the proposition
that Klima has standing to contest the search and seizure of contraband from these areas. Bassano,
827 S.W.2d at 559-60.
      Accordingly, we sustain the State’s second point in part and overrule it in part.
THE SEARCH AND SEIZURE
      The State’s first point asserts that the court erroneously granted the motion to suppress because
the marihuana was legitimately seized under the open fields doctrine.
      We have already determined that Klima has no standing to contest the search and seizure of
the marihuana found near the pond. Thus, we need not decide whether this aspect of the
warrantless search and seizure violates the Fourth Amendment. See Goehring v. State, 627 S.W.2d
159, 164-65 (Tex. Crim. App. [Panel Op.] 1982). Furthermore, “[s]ince [that area] was an open
field, no search warrant was necessary for the law enforcement officers to enter the land and seize
the marihuana.” Beasley v. State, 683 S.W.2d 132, 133 (Tex. App.—Eastland 1984, pet. ref’d);
accord Carroll v. State, 911 S.W.2d 210, 217 (Tex. App.—Austin 1996, no pet.); Rosalez v. State,
875 S.W.2d at 714. Thus, we limit our inquiry to the search and seizure of the marihuana found
in the home and its curtilage.
      The State argued to the court that the search and seizure was appropriate under the open fields
doctrine. The State cited three cases for this proposition: Florida v. Riley, 488 U.S. 445, 109 S.
Ct. 693, 102 L. Ed. 2d 835 (1989); Hurwitz, 673 S.W.2d 347; Smith v. State, 722 S.W.2d 205
(Tex. App.—San Antonio 1986, no pet.).


 We agree that these authorities support the seizure of
the marihuana recovered near the pond.
      However, the State presented no argument or authority to the court to justify the warrantless
intrusion into the home or its curtilage, nor does it present such argument or authority to us. Thus,
we conclude that the State cannot show that the court abused its discretion in granting the motion
to suppress the items seized from these areas. See Klima, 910 S.W.2d at 18; Tex. R. App. P.
52(a).
CONCLUSION
      Based on this record we find that Klima lacks standing to complain of the search and seizure
of the marihuana near the pond because it was located in an “open field.” Thus, the court abused
its discretion in granting the motion to suppress with respect to that contraband. The State failed
to present any argument or authority to justify its warrantless search and seizure of marihuana from
the other areas. Thus, we cannot say that the court abused its discretion in granting the motion
with respect to the contraband recovered from these other areas. We affirm the court’s order in
part and reverse it in part with respect to that marihuana seized from the area near the pond. We
remand the cause for further proceedings consistent with this opinion.
 
                                                                               REX D. DAVIS
                                                                               Chief Justice
 
 
Before Chief Justice Davis
      Justice Cummings and
      Justice Vance
Affirmed in part, reversed in part
      and remanded
Opinion delivered and filed July 16, 1997
Do not publish