TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00559-CR







Jason Isaiah Robinson, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 45,401, HONORABLE JACK W. PRESCOTT, JUDGE PRESIDING







PER CURIAM


 A jury found appellant guilty of capital murder. Tex. Penal Code Ann.
§ 19.03(a)(2) (West 1994). Because appellant was sixteen years old when the offense was
committed, the district court assessed punishment at imprisonment for life. Tex. Penal Code Ann.
§ 8.07(d) (West 1994).

 On the morning of October 14, 1994, the body of Troy David Langseth was found
on the floor of the 19th Hole Pawn Shop in Killeen, where Langseth worked as a clerk. 
Langseth's mouth was covered with duct tape and he had been stabbed four times. The fatal
wound penetrated Langseth's heart and lungs. It was later determined that seventeen firearms had
been stolen from the pawn shop.

 Daniel Park testified that he was a member of a gang called Gong Pai, which he
said was a Korean term for gangster. Park, appellant, and Freddie Li, who were also members
of the gang, formulated a plan to steal guns from the pawn shop, killing the clerk and taking the
store's security videotape in the process. On the morning of the offense, the three young men
drove to the 19th Hole in Park's pickup. Park waited outside while appellant and Li, armed with
pistols and a knife, went inside. Appellant and Li returned to the truck a few minutes later. Li
had the stolen guns and the security videotape in a duffle bag. Appellant was carrying the knife,
on which Park saw blood. Appellant was angry because Li had made him pull the knife from the
clerk's body. After changing clothes and hiding the stolen guns, Park drove appellant to school. 
He and Li then drove to a rural location where they burned the videotape and other evidence. 
They threw the knife into a lake.

 Benjamin Mullins, another gang member, testified that he helped plan the pawn
shop robbery with appellant and Li, but that he had not intended that the clerk be killed. After
the robbery and murder, Park, Li, and appellant described the crime to Mullins. According to
their accounts, appellant first bound and gagged the clerk, then he and Li seized the guns and the
videotape, and finally Li stabbed the clerk.

 Rick Lomba, also a member of Gong Pai, testified that he and his brother
purchased two of the stolen guns from Li and Park. Appellant later told Lomba that he and Li
committed the robbery and murder at the pawn shop, saying it was easy.


1. Corroboration of accomplice testimony.

 In its charge, the district court instructed the jury that Park, Mullins, and Lomba
were accomplices as a matter of law, and that the jury was not to consider their testimony unless
it was corroborated by other evidence tending to connect appellant to the offense. Tex. Code
Crim. Proc. Ann. art. 38.14 (West 1979). In his fourth and fifth points of error, appellant
contends the independent evidence is legally and factually insufficient to corroborate the
accomplices' testimony.

 We review the legal and factual sufficiency of the evidence to sustain a verdict of
guilt. See Jackson v. Virginia, 443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex.
Crim. App. 1991); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App. 1981) (test for legal
sufficiency); Clewis v. State, No. 450-94 (Tex. Crim. App. Jan. 31, 1996); Stone v. State, 823
S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd as untimely filed) (test for factual
sufficiency). Article 38.14, on the other hand, provides the test by which we review the
sufficiency of the evidence corroborating accomplice testimony. It is not necessary that the
corroborative evidence be sufficient in itself to establish guilt. Reed v. State, 744 S.W.2d 112,
126 (Tex. Crim. App. 1988). Under the statute, it is sufficient if it tends to connect the accused
to the offense. 

 A 10 mm. pistol stolen from the 19th Hole Pawn Shop was found under appellant's
mattress during a search of his house. In addition, another member of the Gong Pai gang, Justin
Luevano, testified that he heard appellant and Li planning a robbery to get guns for the gang. 
After the robbery and murder at the 19th Hole, appellant sold Luevano a pistol. Appellant told
Luevano that he and Li stole the pistol during the robbery. This evidence connects appellant to
the capital murder of Troy Langseth and is therefore sufficient to corroborate the accomplice
witnesses. Points of error four and five are overruled.



2. Admission of pistol.

 Appellant unsuccessfully moved to suppress the 10 mm. pistol found during the
search of his house and brings forward two points of error complaining that the search was
unlawful. The search was conducted pursuant to a warrant to search for fifteen of the seventeen
firearms stolen during the robbery and murder at the 19th Hole Pawn Shop. Tex. Code Crim.
Proc. Ann. art. 18.02(1) (West Supp. 1996). It is appellant's contention that the affidavit on
which the warrant was based did not give the issuing magistrate probable cause to believe that the
stolen guns could be found in appellant's house. 

 No search warrant may issue unless supported by an affidavit setting forth
substantial facts establishing probable cause for its issuance. Tex. Code Crim. Proc. Ann. art.
18.01(b) (West Supp. 1996). Probable cause exists when the facts submitted to the magistrate are
sufficient to justify a conclusion that the object of the search is probably on the premises at the
time the warrant is issued. Cassias v. State, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986). In
reviewing the sufficiency of a search warrant affidavit, we consider the totality of the
circumstances. Illinois v. Gates, 462 U.S. 212 (1983); Eisenhauer v. State, 754 S.W.2d 159, 164
(Tex. Crim. App. 1988). The magistrate is permitted to draw reasonable inferences from the
affidavit, which should be interpreted in a common sense and realistic manner. Lagrone v. State,
742 S.W.2d 659, 661 (Tex. Crim. App. 1987). Great deference must be given to the trial court's
ruling on a motion to suppress and it will not be disturbed on appeal absent an abuse of discretion. 
Dubose v. State, 915 S.W.2d 493, 496 (Tex. Crim. App. 1996). 

 The affiant in this cause was Killeen police officer Karl Ortiz. His affidavit can
be summarized as follows:


1. On October 14, 1994, the clerk at the 19th Hole Pawn Shop was found
murdered. The subsequent police investigation disclosed that seventeen handguns
had been stolen.


2. On November 7, 1994, the date of the affidavit, Killeen police officer John
Chapman was told by Mike Davis that a teenaged boy named Jason approached
Davis on November 6 and offered to sell him guns. Davis, a Killeen business man
and long-time resident, suspected that the guns might be connected to the pawn
shop incident and purchased two handguns from Jason. Davis took the guns to
Chapman who, from the serial numbers, determined that they were stolen from the
19th Hole. Davis also told Chapman that Jason had a 10 mm. pistol that he
refused to sell.


3. Also on November 7, a confidential informer told Ortiz that Jason was Jason
Robinson, who lived at 3509 Plains Drive in Killeen. The informer said that he
had been in this house within the previous twenty-four hours and had seen Jason
Robinson in possession of a 10 mm. pistol and other handguns that, from the
"comments and conduct" of Jason Robinson, the informer believed to be stolen. 
The 10 mm. pistol and at least one of the other guns matched the descriptions of
weapons stolen during the robbery and murder at the pawn shop. 


4. The confidential informer had never before given information to Ortiz. Ortiz
believed him to be credible because he had no criminal record and had provided
the information voluntarily and without threats or promises. In addition, the
informer provided Jason Robinson's address and the names of his family members,
which information had been corroborated by Ortiz.



 Appellant finds several faults with the affidavit. First, appellant attacks the
credibility of the confidential informer. While the informer had not previously dealt with the
police, the magistrate was told that he had no criminal record, voluntarily cooperated with the
police, and was given no promises in exchange for his information. Thus, the magistrate knew
that the informer was not the usual arrestee seeking favors in exchange for information. In
addition, the informer knew appellant's address and the names of his family members. Appellant
argues that this "proves nothing," but we believe that it demonstrates some familiarity with
appellant on the part of the informer and could be considered by the magistrate as part of the
totality of the circumstances. 

 Appellant correctly points out that the informer did not provide the serial numbers
of the weapons he saw in appellant's house and thus the affidavit does not positively link them to
the offense. Nevertheless, the guns seen by the informer, one of which was a 10 mm., matched
the general descriptions of guns stolen from the pawn shop. That they were the stolen weapons
is further suggested by the fact that, the day before, a person named Jason sold two handguns that
were identified by their serial numbers as being among those stolen. This Jason, like appellant,
also had a 10 mm. handgun. Considering all the facts and circumstances stated in the affidavit
and the inferences that may be drawn therefrom, we find that a person of reasonable prudence
would believe that guns stolen during the robbery and murder at the pawn shop could be found
in appellant's residence. See McNairy v. State, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991)
(test for probable cause).

 Appellant also challenges Davis's credibility. An average, named citizen is
presumed to be credible and information supplied by such a person may be considered by a
magistrate without a special showing of reliability. Johnson v. State, 803 S.W.2d 272, 289 (Tex.
Crim. App. 1990); Marquez v. State, 725 S.W.2d 217, 233 (Tex. Crim. App. 1987). Appellant
argues, however, that Davis's credibility was destroyed by evidence at trial that he lied to the
police regarding the identity of the person who sold him the stolen guns. Ortiz testified at trial
that one week after the search warrant was executed, he learned that Davis did not purchase the
stolen guns from appellant. In fact, Davis bought them from appellant's neighbor, David Ponath,
who had himself bought them from appellant's accomplice, Li.

 Appellant's motion to suppress did not raise the issue of Davis's credibility. There
is nothing in the record to suggest that Ortiz knew that Davis's information was false at the time
he executed the affidavit. See Rodriguez v. State, 614 S.W.2d 448, 449 (Tex. Crim. App. 1981);
Taylor v. State, 604 S.W.2d 175, 178 (Tex. Crim. App. 1980) (under Franks v. Delaware, 438
U.S. 154 (1978), only affiant may be impeached). Although the fact that Davis lied to the police
was established before the pistol was offered in evidence at trial, appellant did not object to the
admission of the exhibit on this ground. Under the circumstances, any contention that the
information provided by Davis should be disregarded in construing the probable cause affidavit
was not preserved for appeal. Tex. R. App. P. 52(a).

 The district court has not been shown to have abused its discretion in overruling
appellant's motion to suppress. Points of error six and seven are overruled.


3. Admission of appellant's written statement.

 Following his arrest, appellant was taken to the Bell County Juvenile Detention
Facility where he gave a written statement. In this statement, appellant admitted helping Li sell
a number of handguns, keeping one for himself. Appellant claimed that he did not know that the
guns were stolen and denied any involvement in the robbery and murder at the 19th Hole Pawn
Shop. In point of error one, appellant contends his statement was erroneously admitted in
evidence because at the time it was made he was being detained in a place that was not lawfully
certified for the detention of juveniles. Appellant raised this contention in his motion for new trial
and, in point of error two, he urges that the district court erred by overruling the motion.

 In November 1994, when appellant was arrested and his statement was given, the
Family Code required the annual inspection and certification of juvenile detention facilities to
assure their compliance with statutory and regulatory requirements. Act of May 1, 1987, 70th
Leg., R.S., ch. 149, § 31, 1987 Tex. Gen. Laws 707, 1303 (Tex. Fam. Code Ann. § 51.12(c),
since amended). One of these statutory requirements was that "a child shall not be detained in .
. . a jail or lockup in which adults arrested for, charged with, or convicted of crime are detained
or committed . . . ." Family Code, 63d Leg., R.S., ch. 544, sec. 1, § 51.12(a), 1973 Tex. Gen.
Laws 1460, 1465 (Tex. Fam. Code Ann. § 51.12(a), since amended). A child detained in a
facility that was not certified under section 51.12(c) was entitled to immediate release. Tex. Fam.
Code Ann. § 51.12(d) (West 1996). (1)

 Appellant concedes that the Bell County Juvenile Detention Facility was certified
as required by section 51.12(c). Appellant asserts, however, that adult prisoners were admitted
into certain portions of the facility in violation of section 51.12(a). Therefore, appellant argues
that the certification of the facility was invalid and that he was entitled to immediate release
pursuant to section 51.12(d). Appellant concludes that his written statement should have been
suppressed because it would not have been given but for his improper detention.

 Appellant moved to suppress his statement, but the contention he now makes was
not contained in the motion or voiced at the pretrial suppression hearing. When the statement was
offered in evidence at trial, appellant objected on the grounds advanced in his motion to suppress
and on the additional ground that "he was being detained illegally in a place that was not a proper
place of detention under 51.12." Even if this general reference to section 51.12 was sufficient
to bring the argument he now makes to the attention of the district court, at the time the objection
was made there was no evidence in the record that the Bell County Juvenile Detention Facility was
not in full compliance with the Family Code. Appellant urges in his brief that "the substance of
the evidence was apparent from the context in which the objection was made," but this is not so. 
The only evidence cited by appellant concerning the presence of adult prisoners in the juvenile
facility, and the only evidence in that regard we have found in our review of the record, was
adduced at the hearing on appellant's motion for new trial. (2)

 The district court did not err by overruling appellant's objection to the admission
of his statement because, at the time the court was asked to rule, there was no support in the
record for appellant's claim that he had been improperly detained. Further, the court did not
abuse its discretion by overruling appellant's motion for new trial. The admission or exclusion
of evidence must be challenged during trial, and the propriety of the trial court's ruling admitting
evidence cannot be raised for the first time in a motion for new trial. Chandler v. State, 248
S.W.2d 736, 737-38 (Tex. Crim. App. 1952). Appellant was given a full opportunity to challenge
the admission of his written statement at trial. The contention he now advances was not properly
presented to the district court and was therefore waived. See Holland v. State, 802 S.W.2d 696,
700 (Tex. Crim. App. 1991); Tex. R. App. P. 52(a); Tex. R. Crim. Evid. 103(a)
(contemporaneous objection rule). Points of error one and two are overruled.

 Finally, appellant contends in point of error three that his statement to the police
was inadmissible because it was involuntary. Appellant testified at the suppression hearing that
he spoke to his father over the telephone after the statement was typed but before he signed it. 
According to appellant, his father told him that he had hired an attorney and that appellant should
sign nothing. When appellant told the magistrate what his father said, the magistrate took the
phone. After conversing with appellant's father, the magistrate told appellant that his father
"understands better now." Appellant took this to mean that his father no longer objected to
appellant signing the statement. Appellant claims that he would not have signed the statement if
he had not been misled by the magistrate.

 Appellant's father's memory of the relevant events was similar to appellant's. He
testified that when he told the magistrate that he did not want appellant to give a statement, the
magistrate hung up on him.

 The magistrate, Justice of the Peace Eddy Lang, testified that he met appellant at
the juvenile detention center to advise him of his rights before he gave his statement to the police. 
See Tex. Fam. Code Ann. § 51.09(b)(1) (West 1996). Lang recalled that appellant had a
telephone conversation with his father before giving his statement, but denied speaking to
appellant's father at that time. After the statement was complete, Lang again met with appellant
and went over the statement with him. After satisfying himself that appellant gave the statement
voluntarily and with a full appreciation of his rights, Lang had appellant sign the statement in his
presence and then himself signed the magistrate's verification. See sec. 51.09(b)(1)(G). Lang
testified that the only conversation he had with appellant's father came after the statement was
signed.

 Killeen police officer John Chapman, to whom the statement was given, testified
that appellant knew his father had hired an attorney but nevertheless wanted to give a statement. 
In his statement, appellant said, "I also understand that my father has gotten me an attorney and
I am making this statement of my own free will without talking to an attorney. I do not wish to
have an attorney represent me in the making of this statement."

 At a suppression hearing, the court is the sole and exclusive trier of fact and judge
of the credibility of the witnesses and the weight to be given to their testimony. Dubose, 915
S.W.2d at 496. The district court found that the testimony of Lang and Chapman was true and
that appellant's statement was voluntarily given. On this record, the court did not abuse its
discretion by so finding. Point of error three is overruled.

 The judgment of conviction is affirmed.


Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: May 29, 1996

Do Not Publish
1. The code amendments effective January 1, 1996, did not alter section 51.12(d) as it read at
the time of this offense. 
2. Appellant's motion for new trial implicitly acknowledged that the trial record did not
support the claim that he had been improperly detained. The motion urged that a hearing was
required because "[t]he facts necessary for determination of the validity of this Motion for New
Trial are not such as would be evident from the record."



ment because, at the time the court was asked to rule, there was no support in the
record for appellant's claim that he had been improperly detained. Further, the court did not
abuse its discretion by overruling appellant's motion for new trial. The admission or exclusion
of evidence must be challenged during trial, and the propriety of the trial court's ruling admitting
evidence cannot be raised for the first time in a motion for new trial. Chandler v. State, 248
S.W.2d 736, 737-38 (Tex. Crim. App. 1952). Appellant was given a full opportunity to challenge
the admission of his written statement at trial. The contention he now advances was not properly
presented to the district court and was therefore waived. See Holland v. State, 802 S.W.2d 696,
700 (Tex. Crim. App. 1991); Tex. R. App. P. 52(a); Tex. R. Crim. Evid. 103(a)
(contemporaneous objection rule). Points of error one and two are overruled.

 Finally, appellant contends in point of error three that his statement to the police
was inadmissible because it was involuntary. Appellant testified at the suppression hearing that
he spoke to his father over the telephone after the statement was typed but before he signed it. 
According to appellant, his father told him that he had hired an attorney and that appellant should
sign noth